[Cite as *L.M.W. v. B.A.*, 2022-Ohio-2416.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| L.M.W., | : | |
| Respondent-Appellant, | : | |
| | | No. 110783 |
| v. | : | |
| B.A., ET AL., | : | |
| Petitioners-Appellees. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 14, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CV-21-948594 and CV-21-948680

**Appearances:**

L.M.W., *pro se.*

S.A., *pro se.*

EMANUELLA D. GROVES, J.:

{¶ 1} Respondent-appellant L.M.W. appeals the trial court's judgment granting a civil stalking protection order ("CSPO") to petitioner-appellee B.A. For the reasons set forth below, we affirm.

**<u>Procedural and Factual History</u>**

{¶ 2} Since 2004, L.M.W. and S.A. (collectively "the parties") have been neighbors, whose properties abut each other. At the time of the underlying action, L.M.W. was living alone, while S.A. lived with her husband B.A.[1] and an adult daughter.

{¶ 3} Sometime in 2010, a dispute arose, the seeds of which were not discernable from the record, but the parties have been in conflict to this present time. In June 2021, the parties cross-petitioned for a CSPO pursuant to R.C. 2903.214. [2]

**S.A.'s Petition**

{¶ 4} S.A., who generally alleged that L.M.W. was stalking and harassing her family, with the goal of getting them charged criminally, outlined 25 reasons in support of her petition for a CSPO. Taken directly from the petition, the allegations included, but were not limited to:

> (1) Sending two emails to my work email, (a government email), filled with lies and accusations, including that my husband and I are criminals and that we could go to jail.
>
> (2) Constantly taking pictures of me when I am outside on my property and in my home.
>
> (3) She tried to have my son prosecuted after his basketball went on the corner of her property.

---

[1] B.A. is not a party to this appeal but will be referenced in this opinion to provide context.

[2] L.M.W.'s petition included B.A. However, the trial court did not grant L.M.W.'s request for a protection order against B.A.

(4) She has contacted the city possibly a hundred times to complain about me and my family.

(5) She has contacted the [city's] police at least 40 times making complaints about me.

(6) Called the fire department stating that we had an out -of-control fire in our backyard [when] we did not.

(7) She harasses contractors that come to our home; including but not limited to the cable company, a fence installer she physically assaulted, and most recently a land surveyor she threatened to sue and then sent him a certified letter stating that he could not use the markers on her property for the survey.

(8) I have been trying to install a fence on our property near the border of our properties. [L.M.W.] takes pictures of me as I do this, has pulled the fence out of the ground, moved the string used to mark inside the property lines several times, and harassed and made fun of me making it impossible to complete the job.  She also kicks the dirt back into the holes that we dig for the fence, even as we are digging the holes.  She also places stakes in the holes we have dug so we cannot place the fence in the holes without removing the stakes.  We had our property surveyed to show her the holes are on our property, and she is the one trespassing.  She has also threatened to remove and keep the fence (on an email).

(9) She has recently spray-painted part of my property red.

(10) She has stolen or broken three rulers that were attached to my fence on my property and were being used to measure spacing for the new fence.

(11) She appears to want our dog to be put down, she accused him of being aggressive towards her.

(12) She has gone into my mailbox at least three times.

(13) She had over 10 camera's that were placed strategically to view into my home and my yard.  It was impossible for anyone to enter or leave my property without her viewing from her camera.  One camera was placed on a tree pointed directly at my front door.  Another camera was placed approximately 18 feet high and had the ability to zoom into my bathroom and zoom into any small window opening.  This camera was

made for mall and airport parking lots. Most of these cameras view little or none of her own property.

(14) She has sent many certified letters to us. When we stopped accepting them, she sent them in the mail.

(15) Amazon accidentally sent five of my packages to her home and she opened every one of them before returning them to me.

(16) In September 202[0], while I was on my property, she video recorded me (live) for a social media site stating aloud "Hey bloggers" and continued to tell her bloggers that I was a bully and "can you believe she is a teacher."

{¶ 5} On June 10, 2021, the trial court granted an ex parte temporary protection order and set the matter for a full hearing.

**L.M.W.'s Petition**

{¶ 6} L.M.W., who sought protection for herself, her dogs, and her property, centrally alleged that she was unable to go into her yard without being harassed, intimidated, or videotaped by S.A. and B.A. L.M.W. alleged that their behavior had caused extraordinary mental distress, which has made her physically ill and has caused her to fear for her safety and well-being.

{¶ 7} Taken directly from the petition, the allegations included, but were not limited to:

(1) Several times recently I have caught [S.A.] standing on the edge of our shared property line while I am in my yard and while it is pitch dark outside staring at me and stalking me.

(2) [They] will sit in their screened in porch, which is 10 feet from my property stalking me, making noises and harassing me. They will both follow me wherever I go in my yard and just stand and stare at me making me very uncomfortable and feeling unsafe let alone not able to enjoy my property.

(3) S.A. stole stakes that were on my property to keep her from putting up structures that were on and falling on my property. Police were called and she had to return the stakes. At this same police visit she accused me of stealing her property * * *.

(4) [They] are harassing me any time I am outside in my yard. Most recently they had a party (06-03-21) and I was taking a picture of a tree in the front that I am having replaced and did before picture. [B.A.] comes out stalking me, goes back to the party out in the yard, told the party members, approximately 12 individuals, that I was taking pictures of their cars. In addition, S.A. starts yelling my name to everyone in the party, stating the judge made me move my security cameras which is not true, accusing me of criminal activities, which never happened, defaming me to the point I could no longer stay out in my yard. B.A. starts pointing at me while in my yard to draw attention of the party members.

(5) I have shrubs that are placed close to the property line of mine and [S.A.] * * * Each time I come out on my property to trim the shrubs [S.A.] is taking video pictures of me with her phone or her security cameras and harassing me accusing me of being on her property when that is not the case. I do not feel I can go onto my property without being accused of a crime, I do not feel safe, and I do not have any enjoyment while on my property because of the false police reports, harassment, stalking and constant harassment.

(6) [They] have put up structures next to my property line that are not up to the [city's] code. These structures fall onto my property, damaging my property. I have asked her to remove them and all she has done for the last nine months is reposition them, accuse me of stealing them, and filing false report to the police department that I am criminal trespassing on her property. When I try to cut my shrub or trees, go to the edge of my property, she calls the police accusing me of trespassing. * * *.

(7) S.A. is making false statements to police officers and [city] employees stating that my sprinkler system is sprinkling her property, which it is not. She will say I am trespassing on her property, she will say I have security cameras that look into her house, which I do not.

(8) [S.A.] will walk in front of my house and stand there and try to look into my house because my front door is glass out of intimidation.

(9) [S.A.] told neighbors that I was suing a family where both had cancer because I fell walking my dogs. And there is no truth to the story.

[10] As part of the settlement for case [* * *] [they] signed an agreement not to put up illegal structures, could not have security camera viewing any part of my property. [They] have installed cameras that not only views my property but also video record me and others while on my property which is illegal. I filed contempt charges and we will be in court 06-17-2021. However, because of this [their] behavior has escalated, and I cannot tell you the sleepless nights I have had, the crying and mental anguish along with the fear for my safety. After 11 years of this harassment, I do not know how much more I can take. Not doing well physically and mentally.

{¶ 8} On June 10, 2021, the trial court granted an ex parte temporary protection order and set the matter for a full hearing.

{¶ 9} On July 22, 2021, a magistrate conducted a full hearing, where the respective parties appeared pro se. At the outset, the trial court magistrate set forth the ground rules of the hearing and advised the parties they would each be allotted 40 minutes to present reasons in support of their respective petitions. Neither party called witnesses to testify. Instead, both regurgitated their respective reasons for seeking a CSPO against the other. Most of their allotted time was spent on the topics of their properties' boundary lines, S.A.'s desire to install fencing, and L.M.W.'s aversion to the placing of what she deemed "illegal structures" adjacent to her property line.

{¶ 10} After the hearing, the magistrate issued a decision granting L.M.W.'s petition for a CSPO against respondent S.A., but not against B.A. The magistrate granted S.A.'s petition for a CSPO against respondent L.M.W. On September 13, 2021, L.M.W., with leave of court, filed objections to the magistrate's decision

granting S.A.'s petition for a CSPO. On September 27, 2021, the trial court overruled L.M.W.'s objections and adopted the magistrate's decision.

{¶ 11} L.M.W. now appeals[3] and assigns the following errors for review:

## Assignment of Error No. 1

The trial court erred as a matter of law and abused its discretion and violated the Appellants/Petitioner's due process rights opportunity for hearing, confrontation and cross-examination guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution and guaranteed under Section 16, Article I of the Ohio Constitution, and the appellant was denied her right to a full hearing.

## Assignment of Error No. 2

The trial court erred abused its discretion in its implementation of the 40-minute time restriction to present evidence, and a 10-minute closing statement with no opportunity for rebuttal testimony and evidence, and not enough time for [L.M.W.] to present evidence on B.A., resulting in substantial irregularities in the proceedings and prejudice to the Appellant and no Civil Stalking Protection Order issued against B.A.

## Assignment of Error No. 3

The trial court erred abused its discretion when it acted in an arbitrary, unreasonable, and unconscionable manner when it granted Respondent S.A. the option to present video evidence that is part of a pending civil case after ruling numerous times, evidence for this case will not be presented in this hearing. In addition, the video was not an original, but altered to eliminate dates of video and Respondent added

---

[3] The trial court had also granted L.M.W.'s petition for a protection order against S.A. However, S.A. appealed the decision without filing timely objections, in accordance with Civ.R. 65.1(G), to the magistrate's decision granting the CSPO, prior to filing the appeal. When the appellant fails to file objections to the magistrate's decision pertaining to a civil protection order, the appeal must be dismissed. *Daniels v. Daniels,* 4th Dist. Scioto No. 20CA3910, 2021-Ohio-2076; *Fuss v. Gray,* 5th Dist. Stark No. 2021CA00020, 2021-Ohio-3620; *V.O. v. S.C.L.,* 9th Dist. Summit No. 29773, 2021-Ohio-683; *Becker v. Harner,* 12th Dist. Warren No. CA2019-06-064, 2020-Ohio-3234. Consequently, by journal entry dated January 4, 2022, we sua sponte dismissed S.A.'s appeal.

their own verbiage to the video misrepresenting the events captured on the video and making false statements about [L.M.W.].

## Assignment of Error No. 4

The trial court abused its discretion in its ruling to issue a civil stalking protection order against [L.M.W.] based on an email to S.A. at her work. [S.A.] testifies at the hearing that she is not able to receive emails from Appellant because she has them blocked. S.A.'s false statements have prejudiced the case against [L.M.W.] to which a civil stalking protection order was issued against L.M.W.

## Assignment of Error No. 5

The trial court abused its discretion when it granted a Civil Staking Protection Order for L.M.W. The trial court's order is against the manifest weight of the evidence as there is no evidence that Appellant engaged in a pattern of conduct or that caused mental stress.

## Law and Analysis

{¶ 12} For ease of discussion, we will address the assignments of error out of sequence or collectively. In the fifth assignment of error, L.M.W. argues the trial court's order is against the manifest weight of the evidence.

{¶ 13} Preliminarily, R.C. 2903.214 allows a victim of menacing by stalking to obtain a civil stalking protection order. To obtain such an order, the petitioner must establish by a preponderance of the evidence that the respondent's conduct violated the menacing by stalking statute. *E.J.V. v. S.R.*, 8th Dist. Cuyahoga No. 108615, 2020-Ohio-1612, ¶ 12.

{¶ 14} Once issued, a court may modify or vacate a civil protection stalking order, issued under R.C. 2903.214, if the movant shows that the original circumstances have materially changed and it is no longer equitable for the order to continue. *Cipriani v. Ehlert*, 8th Dist. Cuyahoga No. 103767, 2016-Ohio-5840, ¶ 7,

citing *Prostejovsky v. Prostejovsky*, 5th Dist. Ashland No. 06-COA-033, 2007-Ohio-5743.

{¶ 15} We review the decision to grant a civil protection order for an abuse of discretion. *N.P. v. T.N.*, 8th Dist. Cuyahoga No. 106314, 2018-Ohio-2647, ¶ 20, citing *Williams v. Flannery*, 8th Dist. Cuyahoga No. 101880, 2015-Ohio-2040, ¶ 6. An abuse of discretion is where the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1988).

{¶ 16} The trial court properly grants a CSPO if there is "'some competent, credible evidence to support each element of menacing by stalking.'" *M.J.W. v. T.S.*, 8th Dist. Cuyahoga No. 108014, 2019-Ohio-3573, ¶ 26, quoting *Strausser v. White*, 8th Dist. Cuyahoga No. 92091, 2009-Ohio-3597, ¶ 33.

{¶ 17} At the heart of L.M.W.'s fifth assignment of error is the assertion that there is no evidence that she engaged in a pattern of conduct or that she caused S.A. mental distress. Although framed as a challenge to the manifest weight of the evidence, L.M.W.'s assertion and accompanying arguments goes to the sufficiency of the evidence. As such, we will address it as a challenge to the sufficiency of the evidence.

{¶ 18} With this in mind, we note appellate review on the issues of sufficiency and, to be discussed later, manifest weight of the evidence in civil cases is the same as in criminal cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. Under the sufficiency standard, appellate courts review the

evidence presented in the light most favorable to the appellee to determine whether the appellee presented some evidence going to all elements of the claim or offense. *Vega v. Tomas*, 8th Dist. Cuyahoga No. 104647, 2017-Ohio-298, ¶ 9.

{¶ 19} At this juncture, it is important to note that "menacing by stalking" is defined in R.C. 2903.211, which provides in relevant part that "[n]o person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person * * * or cause mental distress to the other person."

{¶ 20} In this matter, the journal entry adopting the magistrate's decision stated in pertinent part as follows:

> [S.A.] testified that [L.M.W.] has sent numerous letters and emails, both to her personal and work email, stating that the [A's] are trespassing and making false statements to police. On 10/15/20, [S.A.] testified and submitted into evidence, an email sent by [L.M.W.] to [S.A.'s] work email. The email again discusses the property line and fence dispute between the parties. [L.M.W.] states in the email "change your behavior or we will end up back in court or one if not both of you in jail." [S.A.] testified that this email to her work caused her much mental distress. [S.A.] had to go to her supervisor to tell them what is going on with L.M.W. because the emails are subject to review by her employer.
>
> [S.A.] testified and submitted video evidence that in 11/2020, of [S.A.] attempting to erect a fence. [L.M.W.] stated that she saw [S.A.] outside putting up the fence and came outside to see what [S.A.] was doing. While [S.A.] is putting the fence in the ground, [L.M.W.] is constantly moving it and at one point grabs the same piece of fence that [S.A.] has in her hands.
>
> [S.A.] testified that the actions of [L.M.W.] have caused her much mental distress and she feels like she cannot go outside her home.

{¶ 21} As noted at the outset, the behavior of these neighbors has continued for a very long time. The journal entry noted that S.A. testified to two actions or incidents, occurring within thirty days. Relevant to the first instance, S.A. testified and submitted into evidence the email that L.M.W. sent to her work email address.

{¶ 22} Specifically, S.A. testified in pertinent part as follows:

I am at my workplace at a meeting with my superintendent and my phone dings, [L.M.W.] sends an email to my work. And this email was filled with non-truths, as well as stating that my husband and I may go to jail. I had to meet with my boss about this email. I'm a schoolteacher. I have never been in trouble with the law ever, and now I'm in a meeting with my boss because I have to explain this email because that email, a parent can request copies of our emails. That is a public record.

* * *

So, now my boss is leaving, I have a new principal who will be my boss in the fall, and now I'm confronted with, do I bring this up with that boss as well. Is this something — because they have a right to read any emails. These are government emails.

* * *

[A]nd my biggest concern by far is the email, sending that to my workplace. That jeopardizes my job.

* * *

And having to talk to my boss about this causes me great mental distress. * * * And explain to him. That is, I have been teaching for 38 years, and I can't even tell you what it was like to have to go and talk to him about this email that was accusing me and stating that I can go to jail, and that my husband can go to jail.

{¶ 23} Regarding the second instance, S.A. testified and submitted video evidence depicting L.M.W.'s behavior in the relevant time. The trial court's journal entry, recited above, sufficiently outlined the behavior of L.M.W. captured on the

video, specifically noting that "at one point [L.M.W.] grabs the same piece of fence that [S.A.] has in her hands."

{¶ 24} Elementally, "pattern of conduct" is defined as "two or more actions or incidents closely related in time." R.C. 2903.211(D)(1). The period in which the incidents must occur to be considered "closely related in time" is a matter to be determined by the trier of fact on a case-by-case basis. *W.P.C. v. S.R.*, 8th Dist. Cuyahoga No. 108613, 2020-Ohio-3178, ¶ 13.

{¶ 25} S.A. testified that L.M.W.'s actions, not limited to the two highlighted above, have caused her much mental distress, resulting in feeling that she cannot go outside her home. At oral argument in this matter, S.A. indicated that she and B.A. have decided to sell their home.

{¶ 26} Critically, "mental distress" is defined as including "any mental illness or condition that involves some temporary substantial incapacity" or "any mental illness or condition that would normally require * * * mental health services," even if the person did not request such services. R.C. 2903.211(D)(2).

{¶ 27} Importantly, expert testimony is not required to establish mental distress, and the trier of fact may rely on its own knowledge and experience in determining whether the respondent's conduct caused mental distress. *R.R. v. J.H.*, 8th Dist. Cuyahoga No. 109465, 2021-Ohio-706, ¶ 29, citing *State v. Wunsch*, 162 Ohio App.3d 21, 2005-Ohio-3498, 832 N.E.2d 757, ¶ 18 (4th Dist.). Furthermore, "'the testimony of the victim herself as to her fear is sufficient to establish mental

distress.'" *Id.,* quoting *State v. Horsley,* 10th Dist. Franklin No. 05AP-350, 2006-Ohio-1208, ¶ 48.

{¶ 28} Here, despite L.M.W.'s assertions to the contrary, upon construing the evidence in a light most favorable to S.A., as we are required to do in a sufficiency analysis, we conclude that the evidence was sufficient to establish that L.M.W. committed acts against S.A. that constituted menacing by stalking under R.C. 2903.211. As such, there exists competent, credible evidence to support each element of menacing by stalking.

{¶ 29} Accordingly, we overrule the fifth assignment of error.

{¶ 30} In the fourth assignment of error, L.M.W. contends that the trial court based its decision to grant the CSPO on S.A.'s claim that L.M.W. sent an email to her place of employment. L.M.W. asserts that S.A.'s statement that L.M.W. sent an email to her work email address was a false claim, because S.A. testified, she had blocked emails from L.M.W. As framed, L.M.W. is challenging the manifest weight of the evidence and we will review it accordingly.

{¶ 31} Under the manifest weight standard, appellate courts must "'weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Eastley,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 20, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 32} In this matter, as previously discussed, S.A. testified about, and submitted into evidence, the email that L.M.W. sent to her work email address. Specifically, S.A. testified about the distress caused by receiving the email at her place of employment. There is no dispute that L.M.W sent the email to S.A.'s place of employment. As such, we find no merit in L.M.W.'s assertion.

{¶ 33} Accordingly, we overrule the fourth assignment of error.

{¶ 34} In the third assignment of error, L.M.W. argues the trial court abused its discretion in allowing S.A. to present video evidence that she claims was part of a pending civil case.

{¶ 35} The admission or exclusion of evidence is within the trial court's discretion, and a reviewing court will not reverse the trial court's decision absent an abuse of that discretion. *T.V. v. R.S.*, 8th Dist. Cuyahoga No. 110049, 2021-Ohio-2444, ¶ 44, citing *State v. Lenard*, 8th Dist. Cuyahoga No. 105998, 2018-Ohio-3365, ¶ 20.

{¶ 36} In this matter, the magistrate advised the parties that they would not be allowed to testify about any matter relating to a 2017 case that had already been adjudicated. The magistrate also advised them about their pending tort claim and cautioned that the testimony they were about to give could potentially be used in any subsequent proceedings. When S.A. asked if she could show the video, L.M.W. objected and stated that it related to the existing pending case. S.A. disputed the claim, and the following exchange took place:

THE COURT: What does the video show?

[S.A.]: It shows her pulling the fence out of the ground. It shows her harassing me. It shows — well, at one point I'm putting the fence in and I am pretty certain she almost always has an audio recorder on her because I see her reach in her pocket and turn it on, and she's pulled it out a few times. It shows her running up to me, grabbing the fence that I'm trying to put back in the ground and screaming that I'm hurting her. It's just — it's impossible to put the fence up. She does not want us to put that fence up.

THE COURT: So, the fence is part of the litigation that you have, but you're stating that there's actions of [L.M.W.] on there, so I'm going to allow you to play it.

{¶ 37} Here, although the fence might be part of a separate pending litigation, the video contained actions of L.M.W. that went to the heart of this matter. Actions that, as discussed previously, caused mental distress to S.A. Further, this was a hearing to the bench, and we presume the trial judge considered only properly admitted evidence. *Berea v. Timm*, 8th Dist. Cuyahoga No. 107740, 2019-Ohio-2573, ¶ 30, citing *State v. Neal*, 8th Dist. Cuyahoga No. 89574, 2008-Ohio-1077, ¶ 18.

{¶ 38} Finally, we find no merit in L.M.W.'s assertion that the video was altered to eliminate the date. The record reveals that a date range of November 13, 2020, to November 20, 2020, was displayed on the video. The trial court did not abuse its discretion in admitting the video.

{¶ 39} Accordingly, we overrule the third assignment of error.

{¶ 40} In the first and second assignments of error, L.M.W. collectively argues that the trial court abused its discretion by denying her due process rights to an opportunity for a hearing, confrontation, and cross-examination. We find no merit in this assertion.

{¶ 41} R.C. 2903.214(D)(3), relative to a CSPO hearing, provides that

[i]f a person who files a petition pursuant to this section does not request an ex parte order, or if a person requests an ex parte order but the court does not issue an ex parte order after an ex parte hearing, the court shall proceed as in a normal civil action and grant a full hearing on the matter.

{¶ 42} As previously stated, the magistrate laid out the ground rules for the hearing before commencing, including advising the parties they would each have 40 minutes to present. The magistrate stated, "So, since [L.M.W.] filed the first petition, I'm going to let her testify first, and then we will move on to [the A's], and then I will let any response back and forth."

{¶ 43} At that time, L.M.W. stated, "So my — I was prepared today to be able to cross-examine, you know, [the A's] and bring out information, but if you want me just to speak to issues, I'm happy to do that." The magistrate, then explained, "So, I'm going to let you respond to each other instead of cross-examining each other. So, I'll let you speak, and then I'll let them speak, and then I'll let you respond."

{¶ 44} Notably, L.M.W. indicated that she was happy with the process the magistrate outlined. Moreover, our review of the record indicates that the hearing proceeded in the very manner the magistrate outlined. When the parties were nearing a segment's allotted time, the magistrate advised them of the time remaining.

{¶ 45} When the magistrate asked B.A. if he had anything to add to the testimony S.A. had already given, he stated, "No, it's pretty well been covered." The

magistrate then wound down the hearing by giving each petitioner ten minutes for closing arguments or to respond to each other.

{¶ 46} To the extent that L.M.W. argues that she was not afforded an opportunity to cross-examine S.A. and B.A., we find no such requirements within R.C. 2903.214(D)(3). *D.H. v. J.C.*, 8th Dist. Cuyahoga No. 108553, 2020-Ohio-112, ¶ 26, citing *Welborn-Harlow v. Fuller*, 6th Dist. Wood No. WD-11-013, 2013-Ohio-54.

{¶ 47} We conclude there is nothing in the record to suggest that L.M.W. was not afforded a full and fair opportunity to be heard on her petition for a CSPO. The magistrate afforded both parties an opportunity to present their arguments related to their respective petitions. As such, we find nothing in the record to suggest that the trial court failed to hold a hearing as required by R.C. 2903.214(D)(3).

{¶ 48} Accordingly, we overrule the first and second assignments of error.

{¶ 49} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

EILEEN A. GALLAGHER, P.J., and
LISA B. FORBES, J., CONCUR