[Cite as *Hendriks v. GNA Canadian Holding Co.*, 2026-Ohio-1580.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| DANIEL HENDRIKS | : | |
| | : | C.A. No. 30469 |
| Appellee/Cross-Appellant | : | |
| | : | Trial Court Case No. 2022-CV-02897 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| GNA CANADIAN HOLDING | : | Court) |
| COMPANY, ET AL. | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellant/Cross-Appellee | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on May 1, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
MICHAEL L. TUCKER, JUDGE

EPLEY, J., and HANSEMAN, J., concur.

**OPINION**

TERRY W. POSEY, JR., Attorney for Appellant/Cross-Appellee
BARTON R. KEYES and ABIGAIL F. CHIN, Attorneys for Appellee/Cross-Appellant

TUCKER, J.

{¶ 1} GNA Canadian Holding Company ("GNA") appeals from the trial court's judgment entry awarding Daniel Hendriks $1,717,787.50 plus interest, following a jury trial on his breach of contract claim involving an employment agreement.

{¶ 2} GNA contends the trial court erred by failing to enter summary judgment in its favor and by declining to admit newly discovered evidence at trial. GNA also challenges the legal sufficiency and manifest weight of the evidence to sustain the jury's verdict. Finally, GNA claims the trial court erred in awarding pre-judgment interest. On cross-appeal, Hendriks challenges the trial court's calculation of prejudgment interest, arguing that the award is too low.

{¶ 3} We see no basis for reversing the trial court's summary judgment ruling and no error in its failure to admit GNA's new evidence. The jury's verdict also is supported by legally sufficient evidence and is not against the weight of the evidence. Finally, the record supports both the trial court's decision to award prejudgment interest and the amount of the award. Accordingly, we affirm the trial court's judgment.

## I. Background

{¶ 4} In 2004, Hendriks began working as a sales manager for the company now known as GNA. His written employment agreement included provisions governing his receipt of company stock and disposition of the stock upon termination of employment. Following a voluntary resignation, he could require GNA to repurchase his shares at 150 percent of net

2

book value. Upon termination by GNA for cause, he could require the repurchase of his shares at 100 percent of net book value. Finally, upon termination by GNA without cause, he could require the repurchase of his shares at 150 percent of net book value. The employment agreement defined "for cause" to mean:

(a) the Employee's material breach of this Agreement, provided that such Employee shall have been given written notice by the Employer of such alleged breach and shall have failed to cure such breach within 30 days after the date of such notice;

(b) The Employee's failure to adhere to any written Employer policy if the Employee has been given a reasonable opportunity to comply with such policy or cure his failure to comply within 30 days after written notice . . . .

{¶ 5} Over time, GNA became dissatisfied with Hendriks' job performance. For present purposes, the details and merits of the company's concerns need not be discussed at length. Based on Hendriks' performance, GNA president Scott Beathard emailed him an attached letter on November 1, 2018. The letter advised Hendriks that his poor performance over several years constituted a material breach of his employment agreement. The letter detailed alleged deficiencies and placed him on paid administrative leave for 30 days. It directed him to submit a plan within that period to cure his deficiencies to enable the company to decide whether his employment would continue after the 30-day period or whether he would be terminated for cause at that time.

{¶ 6} Hendriks received the emailed letter on November 1, 2018, and responded by email three days later. In his November 4, 2018 response, he stated that he had contacted Beathard on October 29, 2018 "for the purpose of arranging a face-to-face meeting to tender my resignation." Hendriks accused Beathard of professing unavailability, anticipating

3

Hendriks' intent to resign, and sending the November 1, 2018 notice to avoid the company's contractual obligations (presumably related to repurchasing shares at 150 percent of net book value upon a resignation). Hendriks closed his response by stating that he intended to continue performing his day-to-day work obligations.

{¶ 7} Hendriks followed up on November 21, 2018, by advising Beathard that the November 1, 2018 notice and the company's actions constituted a "constructive dismissal" that was "not for cause," and he demanded the repurchase of his stock. Hendriks sent another email the following day, claiming that Beathard's "action of Nov. 1 has made it impossible for me to continue" working. Beathard responded on November 28, 2018, seeking clarification of Hendriks' intentions. Beathard noted that the company had placed Hendriks on paid leave and questioned whether he was "resigning before November 30th."

{¶ 8} Hendriks replied by email on November 29, 2018, stating, "I am surprised by your email. I would have thought that my emails on November 21st would have made it clear that my employment has been brought to an end as of that date." He asserted either that he had been constructively discharged or that his November 21, 2018 correspondence constituted a resignation. He claimed that "either way" his employment had "been brought to an end as of November 21st." Beathard then emailed Hendriks later that day, stating in part, "Dan, if you are resigning, then we need to arrange return of our assets—inventory, computer, phone, etc." Finally, Beathard emailed Hendriks on December 2, 2018, advising that the company considered him terminated for cause effective November 30, 2018. The email read in part as follows:

Since we finally received your new personal contact information from you and your clarification that you do not intend to return to work through these issues and have not proposed a corrective plan, we consider you to be terminated for

4

cause, effective November 30, 2018—the end of your paid administrative leave period. We are hereby calling your stock at book value per the contract and will be in contact with you within the appropriate timeframe.

{¶ 9} The parties subsequently disputed whether Hendriks had resigned or had been terminated. In May 2019, GNA sued Hendriks in federal district court, alleging breach of the employment agreement and seeking a declaration that he had been terminated for cause. Hendriks counterclaimed for breach of the employment agreement and sought a declaration that he had resigned or had been terminated without cause. On summary judgment, the federal district court concluded that Hendriks had been terminated for cause on November 30, 2018, meaning that he was entitled to only book value for his company stock. Hendriks appealed to the federal Sixth Circuit Court of Appeals. Among other things, he raised a jurisdictional argument based on the parties' lack of diversity of citizenship. On June 28, 2022, the Sixth Circuit found jurisdiction lacking, vacated the district court's judgment, and remanded for dismissal.

{¶ 10} On June 29, 2022, Hendriks filed the above-captioned action, raising the same claims that had been presented in federal court. GNA responded with a counterclaim for declaratory judgment. The case proceeded to a jury trial in April 2025. Based on the evidence presented, the jury found that Hendriks voluntarily resigned from GNA and that his employment terminated on November 30, 2018. The result was a verdict finding him entitled to 150 percent of the book value of his company stock. Following the jury's verdict, the trial court found GNA obligated to pay Hendriks $5,153,362.50 for his shares. After crediting a prior payment of $3,435,575.00 made in connection with the federal court litigation, the trial court entered judgment against GNA for the remaining balance of $1,717,787.50 plus post-judgment interest. It later awarded Hendriks prejudgment interest of $1,102,431.31. On

5

August 15, 2025, the trial court entered an amended final judgment, merging this interest award into the underlying judgment. The result was a final judgment in favor of Hendriks for $2,820,218.81.

{¶ 11} GNA timely appealed, advancing five assignments of error. Hendriks filed a cross-appeal, raising one assignment of error challenging the amount of prejudgment interest.

## II. GNA's Appeal

{¶ 12}  GNA's first assignment of error states:

**The Trial Court erred in not granting summary judgment to GNA Canadian.**

{¶ 13} GNA contends the trial court should have entered summary judgment in its favor on Hendriks' complaint. Specifically, GNA argues that it was entitled to summary judgment because (1) it adequately notified Hendriks of his alleged default and opportunity to cure under the employment agreement; (2) Hendriks materially breached the employment agreement, failed to cure the breach, and was terminated for cause as a matter of law; and (3) the employment agreement reasonably cannot be read as allowing him to resign after receiving a "notice of termination."

{¶ 14} We find GNA's assignment of error to be unpersuasive. "[A]ny error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 156 (1994). This is true even if "it might have appeared before trial that no genuine issue of material fact

6

existed." *Id*. at 159. A party may be able to challenge the denial of summary judgment, however, if "the denial was predicated upon a pure question of law." *Id*. at 158.

{¶ 15} Here GNA first asserts that Beathard's November 1, 2018 emailed letter to Hendriks alleging performance-based deficiencies constituted legally effective notice of a breach under the employment agreement. As GNA recognizes, however, it prevailed on that issue in a pretrial summary judgment motion, and Hendriks does not challenge the effectiveness of the emailed notice on appeal. Therefore, we need not address the issue.

{¶ 16} GNA next contends the trial court erred in failing to grant it summary judgment on the issue of its termination of Hendriks for cause based on deficient job performance. GNA asserts that "undisputed facts" established Hendriks' material breach of his employment duties over a period of years. The company also argues that Hendriks failed to cure his default as a matter of law. Finally, GNA claims the "undisputed record" establishes that it fired him for cause effective November 30, 2018, after he failed to cure the deficiencies cited in Beathard's November 1, 2018 letter. In connection with this argument, GNA claims that permitting Hendriks to resign after receiving a "notice of termination" would render the termination-for-cause provisions of the employment agreement surplusage and would produce an absurd result.

{¶ 17} Upon review, we conclude that the trial record reveals genuine issues of material fact regarding how the parties' employment relationship ended. Even if we assume, purely arguendo, that GNA's claims of deficient job performance were established as a matter of law, the jury nevertheless found that Hedricks voluntarily resigned rather than being fired. The trial court entered final judgment on that verdict. As we explain more fully below in our resolution of GNA's third and fourth assignments of error, the jury's finding that Hendriks voluntarily resigned is supported by legally sufficient evidence and is not against

7

the weight of the evidence presented at trial. That being so, any alleged error in the trial court's failure to enter summary judgment for GNA on the termination-versus-resignation issue is not grounds for disturbing the jury's verdict or the trial court's final judgment.

{¶ 18} We also are unpersuaded by GNA's argument that allowing Hendriks to resign after receiving a "notice of termination" would render the employment agreement's termination language surplusage and produce an absurd result. GNA reasons that if Hendriks could resign after it initiated for-cause termination, then the agreement's termination provisions would serve no purpose. According to GNA, "every employee could nullify a termination simply by submitting a resignation after the fact, thereby converting a termination into a voluntary separation and altering the financial consequences." GNA asserts that allowing the resignation provisions to override the termination provisions would fail to give effect and meaning to every term. GNA also argues that allowing Hendriks to resign would produce an absurd result because "the moment GNA Canadian exercised its contractual right to terminate, he could instantly defeat that action by 'resigning,' thereby converting an employer-initiated termination into an employee-initiated separation."

{¶ 19} When interpreting a contract, "[w]e seek primarily to give effect to the intent of the parties, and we presume that the intent of the parties is reflected in the plain language of the contract." *Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.*, 2019-Ohio-4716, ¶ 13, citing *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11. Here the pertinent language in the parties' employment agreement is clear and unambiguous. The agreement addressed termination for cause, termination not for cause, and voluntary resignation. Either termination not for cause or voluntary resignation entitled Hendriks to 150 percent of the net book value of his stock, whereas termination for cause entitled him to only 100 percent of the net book value.

8

**{¶ 20}** As noted above, the employment agreement defined "for cause" to mean "the Employee's material breach of this Agreement, provided that such Employee shall have been given written notice by the Employer of such alleged breach and shall have failed to cure such breach within 30 days after the date of such notice." Under this provision, GNA was incapable of terminating Hendriks for cause unless he first received notice of a material breach and failed to cure the breach within 30 days. On the other hand, the employment agreement allowed Hendriks voluntarily to resign immediately upon giving GNA notice.

**{¶ 21}** Despite its characterization in GNA's appellate brief, the November 1, 2018 letter that Beathard emailed to Hendriks was not a "notice of termination." It was a notice of default, advising Hendriks that the company considered him to be in material breach of the employment agreement, placing him on paid administrative leave, and granting him 30 days to propose a plan to cure past performance deficiencies. Neither Beathard's email nor the letter purported to terminate Hendriks' employment. In the email, Beathard expressed hope that Hendriks would "come up with meaningful solutions" during the 30-day leave period. In his letter, Beathard explicitly left unresolved whether Hendriks' employment would continue beyond the 30-day period or whether he would be terminated for cause "at that time."

**{¶ 22}** Having carefully reviewed the terms of the employment agreement, we see nothing preventing Hendriks from responding to Beathard's notice of material breach by resigning. Contrary to GNA's argument, a resignation by Hendriks during the 30-day administrative leave period would not "nullify a termination" or constitute "a resignation after the fact, thereby converting a termination into a voluntary separation." During the 30-day window, there could be no termination to nullify. Again, under the terms of the parties' agreement, GNA could not fire Hendriks for cause until after the 30-day period, and

9

Beathard's November 1, 2018 correspondence did not purport to terminate him. Hendriks unequivocally remained employed by GNA during the administrative leave period.

{¶ 23} We also reject GNA's assertion that allowing Hendriks to resign after receiving the notice of material breach would render the employment agreement's termination provisions surplusage and produce an absurd result. GNA reasons that if Hendriks had a right to resign after receiving the notice, then "[t]he only circumstance in which the termination provisions would have any meaning is if Hendriks did absolutely nothing in response to the termination notice, a result the parties could not have reasonably intended."

{¶ 24} The first problem with GNA's argument is that it characterizes a notice of material breach as a notice of termination. By doing so, the company implicitly presumes that the only reason to give an employee such a notice would be to fire the employee after 30 days. But GNA also reasonably might give notice to an employee with an expectation or hope that the employee would cure the deficient performance and continue working. Indeed, Beathard personally expressed hope that Hendriks would resolve his performance issues during the 30-day cure period.

{¶ 25} GNA's argument also presumes that all employees would elect to resign rather than attempt to cure deficient performance. But some employees reasonably might place a higher value on trying to keep their job than on resigning and redeeming company stock (assuming that they owned any) at a higher value. We are unconvinced that having a right to resign after being informed of a material breach invariably would cause all employees in that situation to resign. Contrary to GNA's argument, the for-cause termination provisions of the employment agreement would retain meaning if an employee elected not to resign, unsuccessfully sought to cure a performance deficiency, and subsequently was fired by GNA. In short, termination for cause remains a plausible outcome after an employee

10

receives notice of a material breach, even if the employee has the option to resign. Although Hendriks personally chose to resign in this case, that single outcome does not render the employment agreement's termination provisions meaningless or demonstrate absurdity.

{¶ 26} In its reply brief, GNA repeats its refrain that allowing Hendriks to resign would negate the company's "termination" of him. It inaccurately frames the issue as "whether an employee can nullify an employer's exercise of its termination rights by resigning after receiving notice of termination." But this oft-repeated assertion about an employee improperly resigning after termination is a red herring. As we have explained, GNA did not fire Hendriks before he resigned. Beathard's November 1, 2018 correspondence to him was a prerequisite to potential future termination for cause. But the letter was not a termination notice, and Beathard had no legal right to fire Hendriks for cause until 30 days after November 1, 2018. The issue in this case more accurately might be framed as whether an employee can resign after being warned that his performance is unsatisfactory and given an opportunity to correct his deficiencies. Surely countless employees nationwide have quit under similar circumstances, and nothing prevented Hendriks from doing so.

{¶ 27} GNA also complains that any time it seeks to terminate an employee for cause, the employee can thwart its plan by resigning. To the extent that GNA is pointing out its obvious inability to fire an employee who already has quit, we do not disagree. Perhaps unfortunately for GNA, it entered into an employment agreement that unambiguously allowed Hendriks to resign at any time while obligating the company to give him notice before firing him for cause. After receiving such notice and weighing his options, Hendriks elected to quit rather than try to save his job. If GNA wished to avoid that outcome, it could have drafted and required an employment agreement disallowing voluntary resignation with a pending notice of material breach. But the parties' agreement lacks such a restriction, and

11

we cannot effectively rewrite its terms where, as here, the controlling language is clear. Accordingly, GNA's first assignment of error is overruled.

{¶ 28} The second assignment of error states:

**The Trial Court abused its discretion in refusing to admit the newly discovered evidence.**

{¶ 29} GNA contends the trial court erroneously excluded evidence about the purpose of a requested in-person meeting between Hendriks and Beathard. In particular, the company challenges the trial court's refusal to admit evidence of October 2018 email correspondence from Hendriks to Beathard requesting a face-to-face meeting to discuss business matters unrelated to his continued employment or resignation.

{¶ 30} GNA claims the email exchange was critical to impeach Hendriks' trial testimony that he wanted to meet Beathard for the purpose of resigning. GNA characterizes this testimony by Hendriks as "the only affirmative evidence of Hendriks' purported attempt to provide notice of resignation." Although GNA produced the emails after the first day of trial and following Hendriks' testimony, the company claims the trial court abused its discretion in excluding them. Despite the late disclosure, GNA contends there was no unfair surprise or prejudice to Hendriks because the subject matter was familiar to him and the emails were his own communications. GNA also argues that the trial court had less drastic options than excluding the messages. The company suggests that exclusion was prejudicial and that the trial court instead could have "issued an appropriate weight admonishment."

{¶ 31} Upon review, we find GNA's assignment of error to be without merit. We will not reverse a trial court's evidentiary ruling absent an abuse of discretion that materially prejudiced the complaining party. *Horenstein, Nicholson & Blumenthal, L.P.A. v. Hilgeman*, 2021-Ohio-3049, ¶ 86 (2d Dist.). In excluding the proffered exhibits, the trial court declined

12

to find that GNA had committed a "purposeful discovery violation" or "blindsided anyone purposefully." It nevertheless noted the lengthy nature of the litigation and observed that the parties were "years outside the deadline for discovery to have been turned over." The trial court also observed that "Beathard was able to find this [evidence] after one day of trial in the evening," suggesting that "it should have been something that would have been discovered."

{¶ 32} We believe the trial court acted within its discretion in excluding the email correspondence. The messages at issue came from Hendriks' GNA corporate email, meaning that he lacked access to them after his employment ended. The emails had been created in late 2018, six and a half years before trial. Discovery had ended years earlier, yet Beathard personally located the emails in the evening after the first day of trial following Hendriks' testimony.

{¶ 33} We also see no real prejudice to GNA from the trial court's evidentiary ruling. The disputed emails involved Hendriks' request for an in-person meeting with Beathard to discuss a distribution agreement with a company client. At trial, Hendriks testified that by late October 2018 he had decided to leave GNA. He stated that he called Beathard and sought a meeting at which he intended to resign in person, but Beathard claimed unavailability. According to Hendriks, he then received the November 1, 2018 notice declaring him in breach of the employment agreement and placing him on administrative leave. Hendriks responded in writing on November 4, 2018, claiming that he had contacted Beathard on October 29, 2018 "for the purpose of arranging a face-to-face meeting to tender my resignation." Hendriks accused Beathard of purposefully being unavailable and then sending a notice of breach to preempt his resignation. Hendriks acknowledged on cross-examination, however, that he had never told Beathard beforehand that the meeting request

13

was for the purpose of resigning. But Hendriks did maintain that resignation was the "only reason" he desired a meeting.

{¶ 34} Although Hendriks purportedly planned to resign in person before receiving the default notice, we find it noteworthy that no meeting with Beathard occurred prior to November 1, 2018. Moreover, considering that Hendriks did not tell Beathard beforehand that his intended purpose for the meeting was to resign, we fail to see how GNA was particularly prejudiced by being unable to impeach Hendriks with evidence indicating an additional or perhaps alternative motive for the unfulfilled meeting request. GNA effectively recognizes this fact elsewhere in its brief. When addressing the manifest weight of the evidence, the company acknowledges that "it is immaterial" whether Hendriks requested a meeting to resign or to discuss a client's contract. We agree. GNA correctly observes in its appellate brief that "there is a critical distinction between intending to provide notice of resignation at a future meeting and actually providing notice of resignation at said meeting." Whatever Hendriks intended when he requested the meeting, GNA properly notes that "he did not provide notice of his resignation" at that time.

{¶ 35} In essence, the record establishes only that Hendriks professed to have an unarticulated desire to resign prior to receiving a notice placing him on administrative leave. Given that the employment agreement allowed him to resign even after receiving the notice from Beathard, whether he privately intended to resign prior to that date had little relevance at trial. Indeed, as we explain in our resolution of GNA's third and fourth assignments of error, the record contains ample evidence in the form of other emails and letters post-dating November 1, 2018, that support a finding that Hendriks voluntarily resigned from GNA after receiving Beathard's notice. Contrary to the suggestion in GNA's appellate brief, Hendriks' testimony about the purpose of his request to meet Beathard before November 1, 2018, was

14

far from "the sole affirmative evidence supporting his claim of attempted resignation." GNA's second assignment of error is overruled.

**{¶ 36}** The third and fourth assignments of error state:

**The jury verdict was legally insufficient.**

**The jury verdict was against the manifest weight of the evidence.**

**{¶ 37}** GNA challenges the legal sufficiency and manifest weight of the evidence to support the jury's verdict that Hendriks voluntarily resigned. The company contends the record lacks evidence that Hendriks provided it with a notice of resignation before receiving the notice of breach from Beathard or even during the subsequent 30-day cure period. GNA asserts that Hendriks merely had contemplated or planned to resign prior to receiving the notice from Beathard. GNA maintains that after Hendriks received the notice, he variously announced his intention to continue performing his duties, indicated that he was "trying" to resign, discussed a "cure" plan with Beathard, declared himself the victim of a constructive discharge, and remained on paid administrative leave throughout the cure period. GNA asserts that Beathard contacted Hendriks about Hendriks' intentions near the end of the cure period, and Hendriks still did not say he was resigning. GNA argues that Hendriks' position remained either that he had been constructively discharged or that he could not comply with the cure requirements. The company contends the record is devoid of evidence that Hendriks ever provided a notice of resignation during the cure period.

**{¶ 38}** Alternatively, even if the record contains legally sufficient evidence that Hendriks resigned, GNA claims such a finding is against the manifest weight of the evidence. The company again notes that Hendriks did not provide a notice of resignation before receiving Beathard's default notice. Rather, Hendriks' own testimony showed that he merely contemplated resigning and unsuccessfully tried to schedule a meeting with Beathard to

15

announce his resignation. As evidence that Hendriks had not resigned, GNA reiterates his subsequent claims about constructive resignation and being unable to access company resources. GNA argues that Hendriks continued to claim constructive discharge near the end of the cure period.

{¶ 39} We begin our analysis of GNA's arguments by noting the parties' disagreement about whether the company's failure to move for a directed verdict at trial waived its ability to raise a legal-sufficiency challenge on appeal. But we need not dwell on this issue. Even assuming, arguendo, that waiver does not apply, the record contains legally sufficient evidence to support a finding that Hendriks resigned from GNA. The jury's finding on that issue also is not against the manifest weight of the evidence.

{¶ 40} "Under the sufficiency standard, appellate courts review the evidence presented in the light most favorable to the appellee. . . ." *L.M.W. v. B.A.*, 2022-Ohio-2416, ¶ 18 (8th Dist.). Legally sufficient evidence exists where there is some evidence to support each element of a claim. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis in original.) *Id*. at ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "In determining whether a verdict is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Meyer v. Lucas*, 2024-Ohio-3035, ¶ 22 (2d Dist.), citing *Eastley* at ¶ 20.

16

{¶ 41} As we explained above, Beathard's November 1, 2018 default notice neither terminated Hendriks nor prevented him from resigning. During the 30-day cure period, Hendriks sent Beathard a November 21, 2018 email with a letter attached. Hendriks claimed that he had been constructively discharged without cause. Beathard responded on November 28, 2018, seeking to "clarify" Hendriks' intentions regarding continued employment. Beathard stated, "Still need to clarify your intentions, we have you on paid leave, but are you resigning before November 30?" Hendriks answered in an email the following day. He told Beathard that his attorney believed he had been constructively discharged. If that was incorrect, Hendriks stated that his "actions on November 21 would amount to a resignation in law." He added that "[e]ither way, my employment has been brought to an end as of November 21." Beathard responded the same day, advising Hendriks to return company property and provide contact information if he was "resigning." At trial, Beathard admitted that Hendriks then had promptly provided his contact information and arranged for the return of company property.

{¶ 42} Beathard also agreed at trial that by November 22, 2018, Hendriks had "made it clear he wasn't coming back." Beathard acknowledged prior deposition testimony in which he agreed that as of November 22, 2018, he "understood" Hendriks was resigning. Notably, Beathard further agreed at trial that by November 29, 2018, he had "no doubt" that Hendriks' employment "had ended." Once again, November 29, 2018, was when Hendriks told Beathard that if he had not been constructively discharged, then Hendriks' own actions constituted "a resignation in law."

{¶ 43} Beathard's reasonable understanding from Hendriks' communications that the employment relationship "had ended" no later than November 29, 2018, is legally significant. As of that date, there were only two ways for Hendriks' employment to end: (1) termination

17

by GNA without cause or (2) resignation by Hendriks. Until the 30-day cure period expired, the company was unable to terminate him for cause. Notably, Hendriks was entitled to 150 percent of the net book value of his stock regardless of whether he was terminated without cause or voluntarily resigned. In any event, based on the evidence discussed above, the jury reasonably determined that Hendriks had resigned during the 30-day cure period. The jury's verdict on that issue is supported by legally sufficient evidence and is not against the manifest weight of the evidence. We see some evidence supporting the finding of resignation, and the jury did not clearly lose its way and create a manifest miscarriage of justice when weighing the evidence.

{¶ 44} Finally, we note that Beathard contacted Hendriks on December 2, 2018, and declared him terminated for cause effective November 30, 2018, which was only 29 days after Beathard's November 1, 2018 notice of breach. This means the 30-day cure period had not yet expired. The employment agreement precluded "cause" for termination from arising until expiration of this period. Consequently, even GNA's claimed termination appears not to have met the requirements of a for-cause termination. Although Hendriks mentions this issue in his appellate brief, we need not resolve it definitively given our determination that the jury's finding of resignation is supported by legally sufficient evidence and is not against the manifest weight of the evidence. GNA's third and fourth assignments of error are overruled.

{¶ 45} The fifth assignment of error states:

**The Trial Court erred in awarding prejudgment interest.**

{¶ 46} GNA contends the trial court erred in awarding Hendriks prejudgment interest for five reasons: (1) the employment agreement did not provide for prejudgment interest under the circumstances, (2) no interest accrued while the purchase price of Hendriks'

18

shares remained disputed, (3) a 2022 partial lump-sum payment for Hendriks' shares eliminated any basis for prejudgment interest, (4) the trial court's award of prejudgment interest contradicted its prior ruling denying the same, and (5) public policy supports denying prejudgment interest.

**{¶ 47}** Upon review, we find the foregoing arguments to be unpersuasive. The jury found that Hendriks voluntarily resigned from GNA effective November 30, 2018. Based on the jury's verdict, the trial court determined that the company's purchase price for his shares was $5,153,362.50. The employment agreement obligated GNA to pay him 20 percent of this amount within six months of redemption with the remaining balance to be evidenced by a promissory note to be paid in five annual instalments with interest. The trial court found that GNA exercised its option to redeem Hendriks' shares on December 18, 2018. Therefore, the trial court reasoned that 20 percent of the purchase price ($1,030,672.50) "became due and owing to Hendriks on or before June 18, 2019."

**{¶ 48}** As for the remaining 80 percent ($4,122,690.00), under the employment agreement it should have been evidenced by a promissory note with a five-year payout period. Although GNA never executed a promissory note, the trial court found that the company's initial annual payment on the required note "would have been due and owing to Hendriks on or before June 18, 2020" and would have paid him principal of $824,538.00. The trial court observed, however, that GNA never made any payment to Hendriks until February 28, 2022, in connection with the company's lawsuit against him in federal court. On that date, GNA made a lump-sum payment of $3,435,575.00.

**{¶ 49}** The trial court pointed out that the promissory note required by the employment agreement was to contain an acceleration clause, making the entire unpaid balance due if GNA's defaulted on its annual installment payments. Therefore, the trial court reasoned that

when GNA failed to make its initial installment payment on or before June 18, 2020, the entire balance of $4,122,690.00 was accelerated "and became due and owing to Hendriks as of June 19, 2020."

**{¶ 50}** Based on the foregoing analysis, the Court found Hendriks statutorily entitled to prejudgment interest under R.C. 1343.03(A) as follows:

The Court finds that 20% of the total $5,153,362.50 purchase price, or $1,030,672.50, became due and owing to Hendriks as of June 19, 2019. As such, the Court finds that Hendriks is entitled to prejudgment interest on this $1,030,672.50 amount at a rate of 7.25% from June 19, 2019, through February 28, 2022, when GNA made its payment of $3,435,575.00 to Hendriks which partially satisfied the final judgment. Accordingly, the Court hereby awards prejudgment interest to Hendriks on this $1,030,672.50 amount for this time period in the amount of $201,651.78. ($1,030,672.50 x (.0725/365) x 985 days).

The Court further finds that the remaining 80% of the total $5,153,362.50 purchase price, or $4,122,690.00, became due and owing to Hendriks as of June 19, 2020. As such, the Court finds that Hendriks is entitled to prejudgment interest on this $4,122,690.00 amount at a rate of 7.25% from June 19, 2020, through February 28, 2022, when GNA made its payment of $3,435,575.00 to Hendriks which partially satisfied the final judgment. Accordingly, the Court hereby awards prejudgment interest to Hendriks on this $4,122,690.00 amount for this time period in the amount of $507,712.10. ($4,122,690.00 x (.0725/365) x 620 days).

20

The Court further finds that, after GNA partially satisfied the $5,153,362.50 final judgment with its payment to Hendriks of $3,435,575.00 made on February 28, 2022, the unsatisfied portion of the final judgment in the amount of $1,717,787.50 remained due and owing to Hendriks as of March 1, 2022. As such, the Court finds that Hendriks is entitled to prejudgment interest on this outstanding $1,717,787.50 amount at a rate of 7.25% from March 1, 2022, through April 25, 2025, when the Court entered final judgment in favor of Hendriks. Accordingly, the Court hereby awards prejudgment interest to Hendriks on this $1,717,787.50 amount for this time period in the amount of $393,067.43. ($1,717,787.50 x (.0725/365) x 1,152 days).

(Emphasis deleted.) August 8, 2025 Order and Entry, p. 8-9.

{¶ 51} On appeal, GNA first contends the employment agreement did not provide for prejudgment interest in this case. Although R.C. 1343.03(A) generally mandates prejudgment interest to the prevailing party on a breach of contract claim, GNA notes that the employment agreement obligated it to pay 20 percent of the purchase price of Hendriks' shares within six months of redemption with the remaining 80 percent to be evidenced by a promissory note. GNA reasons that "[i]nterest could therefore only accrue on a promissory note for the balance of the purchase price." Because it never issued a promissory note, the company argues that it never incurred an obligation to pay any prejudgment interest.

{¶ 52} As a matter of law and logic, we find GNA's argument to be unpersuasive. The jury's verdict did not create GNA's contractual obligation to pay Hendriks $5,153,362.50 based on its redemption of his stock following his voluntary resignation. The verdict merely recognized that GNA had owed him the money all along. *Mundy v. Roy*, 2006-Ohio-993, ¶ 32 (2d Dist.). As set forth above, the employment agreement obligated GNA to pay

21

Hendriks 20 percent of the purchase price within six months, which it did not do, and to execute a five-year promissory note for the balance, which it also did not do. GNA cannot now avoid an obligation to pay interest on the unpaid amount owed based on its failure to make the initial payment and subsequent failure to execute the promissory note that it was legally obligated to execute.

{¶ 53} GNA next insists, however, that "no promissory note could be issued" while the purchase price of Hendriks' stock was in dispute. Because the parties disagreed about the redemption value from November 2018 (when Hendriks voluntarily resigned) through April 2025 (when the trial court entered judgment on the jury's verdict), GNA reasons that it was unable to issue a promissory note and, therefore, that no prejudgment interest accrued.

{¶ 54} We find this argument to be unpersuasive for at least two reasons. First, GNA disputed the purchase price of Hendriks' stock at its own peril. He maintained that he was entitled to 150 percent of the net book value because he voluntarily resigned. GNA insisted that he was entitled to 100 percent because it terminated him for cause. Based on the jury's verdict, it turned out that Hendriks' position had been correct all along. Therefore, GNA could and should have executed a promissory note based on the valuation found by the trial court. Once again, the jury's verdict did not create this obligation. The verdict simply recognized its existence from the outset. Second, GNA, at a minimum, could have paid Hendriks 20 percent within six months and executed a five-year promissory note with interest based on the company's claimed valuation. Instead, it paid him nothing until making a partial lump-sum payment in February 28, 2022, years after his resignation, in connection with GNA's federal lawsuit.

{¶ 55} GNA also argues that its partial lump-sum payment of $3,435,575.00 during the federal court litigation represented the purchase price of Hendriks' stock based on a for-

22

cause termination. Following that payment, the company contends no balance remained unpaid, meaning that no prejudgment interest accrued. In the present case, however, the jury found that Hendriks had resigned, meaning that the GNA's partial lump-sum payment neither fully satisfied its obligation nor precluded an award of prejudgment interest. We note too that the trial court took the partial lump-sum payment into account when calculating the prejudgment interest to which Hendriks was entitled.

{¶ 56} GNA next asserts that the trial court's prejudgment interest award "directly contradicts" the trial court's earlier finding that no interest accrued while this litigation was pending. For its part, the trial court seemingly found no conflict, reasoning that the "issue of whether Hendriks was statutorily entitled to prejudgment interest on a final judgment in his favor by law pursuant to R.C. 1343.03(A) has not been previously addressed by this Court." *See* August 8, 2025 Order and Entry, p. 5. Regardless, the prior ruling referenced by GNA was an interlocutory partial summary judgment decision, which the trial court was free to revise. *Airtron, Inc. v. Tobias*, 2021-Ohio-2213, ¶ 32 (2d Dist.) ("When an order is interlocutory, it remains subject to modification by the court unless it is certified suitable for appeal, or the action is terminated as to all claims and parties.").

{¶ 57} Finally, GNA raises a public policy argument. The company asserts that awarding prejudgment interest unfairly penalizes it for Hendriks' objectionable litigation tactics. GNA faults him for "disputing the purchase price for years," "forcing multiple rounds of litigation," and then "belatedly assert[ing] the federal court lacked jurisdiction." Under these circumstances, GNA contends awarding prejudgment interest violates public policy by rewarding Hendriks "for strategically delaying resolution while simultaneously accruing interest that the Employment Agreement never authorized."

{¶ 58} Regarding the purchase price for Hendriks' stock, the jury agreed with his position. GNA turned out to be the party that erroneously disputed the price for years. We also do not fault Hendriks for "multiple rounds of litigation." After wrongly rejecting his claim of voluntary resignation, GNA erred again by commencing the first round of litigation in federal district court where jurisdiction did not exist. When the case reached the Sixth Circuit Court of Appeals, Hendriks recognized the lack of diversity of citizenship and obtained dismissal of GNA's lawsuit against him. He cannot be faulted, however, for time and resources spent litigating a case that GNA itself misfiled in federal court. The second round of litigation then commenced when Hendriks sued GNA in the above-captioned case to obtain what the jury and the trial court ultimately awarded him. GNA could have avoided this second round of litigating by properly compensating him in accordance with the employment agreement. On the record before use, we see no persuasive public policy rationale for denying Hendriks prejudgment interest. GNA's fifth assignment of error is overruled.

### III. Hendriks' Cross-Appeal

{¶ 59} Hendriks' assignment of error on cross-appeal states:

**The Trial Court erred in its prejudgment interest calculation**.

{¶ 60} Hendriks acknowledges that the trial court properly awarded him prejudgment interest on the first 20 percent of the total purchase price of his stock beginning on June 19, 2019, which was six months after his voluntary resignation. Under the employment agreement, on that date, compensation for the first 20 percent became due and payable to him. He claims the trial court erred, however, in finding no prejudgment interest due and payable on the remaining 80 percent until one year later on June 19, 2020, when GNA was contractually obligated to make the first of five annual payments under a promissory note that it never executed.

24

{¶ 61} Hendriks reasons that the initial 20 percent payment and the required promissory note covering the remaining 80 percent were "part of one overall obligation." He argues that GNA "breached that obligation from day one and refused it for several more years." As a result, he asserts that the trial court should have found the entire $5,153,362.50 purchase price "due and owing from June 19, 2019 (the date after GNA breached its obligation to pay 20% down and issue a promissory note)."

{¶ 62} We typically review a trial court's determination of when a debt became due and payable for an abuse of discretion. *MRC Innovations, Inc. v. Lion Apparel, Inc.*, 2020-Ohio-694, ¶ 40 (2d Dist.). Here Hendriks urges us to review the issue de novo, claiming that it involves contract interpretation. But we see no error in the trial court's calculation under either standard of review. Prejudgment interest begins when a debt becomes due and payable unless provided otherwise in a contract. *MRC Innovations* at ¶ 39, citing *Wakeman Eagles Aerie No. 4354, Inc. v. Seitz*, 2014-Ohio-1007, ¶ 2 (6th Dist.) The trial court correctly found the first 20 percent of the stock purchase price due and payable six months after Hendriks resigned. Under the employment agreement, one year later, GNA should have executed a promissory note and made the first of five annual payments on the remaining 80 percent. Notwithstanding Hendriks' argument, we believe the trial court correctly found that none of the remaining 80 percent of the purchase price was due and payable until then. His characterization of the required 20 percent payment and the later 80 percent payment over five years as components of a single "obligation" fails to persuade us that the entire purchase price was due and payable six months after he resigned. Accordingly, we overrule his assignment of error.

### IV. Conclusion

{¶ 63} The judgment of the Montgomery County Common Pleas Court is affirmed.

25

. . . . . . . . . . . . .

EPLEY, J., and HANSEMAN, J., concur.